IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TERRIANNE BOULET, JUSTIN | § | |
| BOULET, and STEPHEN BOULET, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0105 |
| | § | |
| FLUOR CORPORATION, FLUOR | § | |
| CORPORATION SALARIED | § | |
| EMPLOYEES' SAVINGS INVESTMENT | § | |
| PLAN, FLUOR EMPLOYEES' | § | |
| PERFORMANCE PLAN, and | § | |
| DARLENE BOULET, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Terrianne Boulet (Terrianne), Justin Boulet
(Justin), and Stephen Boulet (Stephen), bring this action against
defendants, Fluor Corporation, Fluor Corporation Salaried
Employees' Savings Investment Plan, Fluor Employees' Performance
Plan (collectively Fluor), and Darlene Boulet (Darlene), for
recovery of retirement benefits allegedly withheld in violation of
the Employee Retirement Income Security Act (ERISA), 29 U.S.C.
§§ 1001, et seq., breach of contract, breach of fiduciary duty,
unjust enrichment, declaratory judgment, and attorney's fees.
Pending before the court are Defendant Darlene Boulet's Motion for
Summary Judgment (Docket Entry No. 16), Plaintiffs' Motion for
Summary Judgment (Docket Entry No. 17), and Defendant Fluor's

Partial Motion for Summary Judgment and Partial Motion for Declaratory Judgment (Docket Entry No. 23). For the reasons explained below Darlene Boutlet's motion for summary judgment will be granted, Fluor's motion for partial summary judgment and motion for partial declaratory judgment will be granted, and plaintiffs' motion for summary judgment will be denied.

## I.   <u>Standard of Review</u>

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>),

-2-

(quoting <u>Celotex</u>, 106 S.Ct. at 2553-2554).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  <u>Id.</u> (citing <u>Celotex</u>, 106 S.Ct. at 2553-2554).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  <u>Reeves v. Sanderson Plumbing Products Inc.</u>, 120 S.Ct. 2097, 2110 (2000).  Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  <u>Little</u>, 37 F.3d at 1075.

## II. <u>Undisputed Facts</u>

Plaintiff Terrianne married Jimmy Boulet (Jimmy); plaintiffs Justin and Stephen are the natural sons of Terrianne and Jimmy.  On March 25, 1992, while Terrianne and Jimmy were married, Jimmy began to work for Fluor as a project manager.  On October 27, 1992, Terrianne and Jimmy divorced.  On April 6, 1993, Jimmy completed, signed, and submitted to Fluor a handwritten Designation of Beneficiary form, which named plaintiffs as the three primary beneficiaries of his interests in the "Retirement Plan/Savings Investment Plan" in the following amounts:  Stephen, 25%; Justin,

25%; and Terrianne, 50%.[1]  The form was stamped "received" by "employee benefits development" on April 8, 1993, and expressly states "not valid unless signed."[2]

On May 25, 1996, Jimmy married Darlene.[3]  On December 3, 1997, Fluor received a second Designation of Beneficiary form naming Darlene Boulet as the beneficiary of Jimmy's retirement benefits.[4] Although the form was not signed, Darlene asserts without objection that the form was filled out solely in Jimmy's handwriting.[5]

Jimmy participated in Fluor's retirement plans until he died on April 6, 2001.[6]  The retirement plans were (1) the Amended Retirement Plan, (2) the Savings and Investment Plan (SIP), (3) the Performance Plan, (4) the Defined Retirement Plan, and (5) the

---

[1]See Designation of Beneficiary, Exhibit A attached to Complaint, Docket Entry No. 1.  See also Plaintiffs' Motion for Summary Judgment and Response to Darlene Boulet's Motion for Summary Judgment, Docket Entry Nos. 17/18 (Plaintiffs' Motion and Response), p. 4, and Exhibit 3 attached thereto.

[2]Id.  See also Plaintiffs' Motion and Response, p. 4, and Exhibit 3 attached thereto.

[3]See Marriage License, Exhibit 10 attached to Plaintiffs' Motion and Response.

[4]See Designation of Beneficiary, Exhibit 4 attached to Plaintiffs' Motion and Response.

[5]See Memorandum and Points of Authority attached to Defendant, Darlene Boulet's Motion and Notice of Motion for Summary Judgment (Darlene's Memorandum), Docket Entry No. 16, first unnumbered page.

[6]See Death Certificate, Exhibit 2 attached to Plaintiffs' Motion and Response.

Executive Deferred Compensation Plan (EDCP).[7]  Fluor sponsored each
of these retirement plans.   Prior to Jimmy's death, the Amended
Retirement Plan, the Performance Plan, and Defined Retirement Plan
were consolidated into the SIP.[8]  The parties agree that the SIP is
a "qualified" plan, and the EDCP is a "nonqualified" plan.

On April 12, 2001, Lew Smith of Fluor sent Darlene a letter
"regarding the status of the benefits Jimmy had with Fluor."[9]
Regarding the "Company Retirement Plans" the letter states:

> Jimmy was a participant in Fluor Corporation retirement
> plans.   The following is an approximation of the account
> values of each of the plans as of February 28, 2001:
>
> Amended Retirement Plan          $  59,832.36
> Savings Investment Plan-401(k)   $ 134,673.06
> Performance Plan                 $   7,178.72
> Defined Retirement Plan          $  11,270.42.[10]

The letter also stated that "[a]s of February 28, 2001, Jimmy's
unaudited account balance [in the "Executive Deferred Compensation
Program Account [EDCP]"] was approximately $242,104.78."[11]

On April 25, 2001, "[p]laintiffs, as Jimmy's designated
beneficiaries, submitted to Fluor a written claim for benefits

---

[7]See Deposition of Fluor Representative Mark Gray (Gray
Deposition), Exhibit 11 attached to Plaintiffs' Motion and
Response, pp. 9-10.

[8]Id. at pp. 35-36.

[9]See Lew Smith Letter of April 12, 2001, Exhibit 5 attached to
Plaintiffs' Motion and Response.

[10]Id.

[11]Id.

-5-

under the SIP and the EDCP."[12]   Upon determining that Darlene was

Jimmy's surviving spouse, Fluor paid the qualified plan benefits to

her.[13]   Fluor did not reach a decision as to who should receive the

EDCP benefits and now asks the court to make that determination.[14]

### III.  Cross-Motions for Summary Judgment

Plaintiffs allege that

Jimmy designated Plaintiffs as beneficiaries under the
Plans.  Defendants failed to follow Jimmy's beneficiary
designation and pay to Plaintiffs the benefits, failed to
follow the plain language of the Plans and pay to
Plaintiffs the benefits, failed to conduct a proper
investigation to determine whether Plaintiffs were
beneficiaries under the Plans, acted arbitrarily and
capriciously in paying benefits to Darlene Boulet, failed
to notify Plaintiffs that their claims had been denied so
that Plaintiffs could file an appeal in accordance with
the Plans, and failed to notify Jimmy and Plaintiffs as
to the status of Jimmy's beneficiary designation, if it
ever became invalid.[15]

Asserting that benefits from plans qualified under Section

401(a) of the Internal Revenue Code of 1986, as amended, 26 U.S.C.

§§ 1, et seq. (IRC), have already been properly distributed to

Jimmy's surviving spouse in accordance with the plain language of

---

[12]See Letter from plaintiffs' attorney Jacob Walla to Sandy
Horvath, Fluor's Manager of Human Relations, Exhibit 9 attached to
Plaintiffs' Motion and Response.

[13]Defendant Fluor's Response to Plaintiffs' Motion for Summary
Judgment and Defendant Fluor's Partial Motion for Summary Judgment
and Partial Motion for Declaratory Judgment (Fluor Response and
Motions), Docket Entry No. 23, pp. 2, 7-22.

[14]Id. at pp. 2, 22-24.

[15]Complaint, Docket Entry No. 1, pp. 6-7, ¶ 15.

the governing plan documents and ERISA, but that benefits accrued by Jimmy under the nonqualified plan have not yet been distributed to a beneficiary, "Fluor respectfully requests that the [c]ourt declare who is the proper beneficiary thereunder,"[16] and "seeks to constructively interplead the Nonqualified Plan benefits into the registry of this [c]ourt so that it by order may direct Fluor to make payment to the party or parties determined by this [c]ourt to be the proper beneficiaries under the Nonqualified Plan."[17]

## A.    Qualified Plan Benefits

Qualified plans are plans that satisfy the requirements of IRC § 401(a), 26 U.S.C. § 401(a).[18]   All parties agree (1) that the qualified plans at issue are the Amended Retirement Plan, the SIP, the Performance Plan, and the Defined Retirement Plan, all of which were consolidated into the SIP prior to Jimmy's death, (2) that the "qualified" SIP plan is governed by ERISA, and (3) that Fluor distributed the qualified plan benefits to Darlene upon concluding that she was Jimmy's beneficiary for purposes of receiving those benefits.[19]   Darlene argues that she is entitled to summary judgment

---

[16]Fluor Response and Motions at p. 1.

[17]Id. at p. 2.

[18]Id. at p. 3.

[19]See Darlene's Memorandum at first and second unnumbered pages; Plaintiffs' Motion and Response at p. 3; and Fluor's Response and Motions at pp. 1, 3.

on plaintiffs' claims for qualified plan benefits because the Designation of Beneficiary form that Fluor received on December 8, 1997, shows that Jimmy intended her to receive his retirement benefits, and because "the F[lour d]efendants correctly determined that [she] is the lawful and proper beneficiary of all of her deceased husband['s] . . . retirement benefits under applicable law as well as under F[luor's] retirement 'Plans.'"[20]  Plaintiffs argue that they are entitled to summary judgment on their claims for qualified plan benefits because Jimmy's April 6, 1993, Designation of Beneficiary Form remained valid even after his marriage to Darlene since Jimmy never filed another valid beneficiary designation.[21]

### 1.   Standard of Review

When an ERISA-governed retirement plan gives its administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a reviewing court must evaluate the plan administrator's decision under an abuse of discretion standard.  Firestone Tire & Rubber Co. v. Bruch, 109 S.Ct. 948, 956 (1989); Wildbur v. ARCO Chem. Co., 974 F.2d 631, 636 (5th Cir. 1992).  The qualified retirement plan at issue in this case explicitly grants its Administrative Committee "the discretionary

---

[20]Darlene Boulet's Motion for and Notice of Motion for Summary Judgment (Darlene's Motion), Docket Entry No. 16, p. 1.

[21]Plaintiffs' Motion and Response at p. 5.

authority to determine eligibility for benefits and to construe the terms of the Plan,"[22] and provides that "[a]ll discretions conferred upon the Administrative Committee shall be absolute."[23]  A grant of discretionary authority that contemplates interpreting plan terms in an absolute manner is sufficient to invoke the abuse of discretion standard.  <u>See</u> <u>Wildbur</u>, 974 F.2d at 637.  Accordingly, this court must determine whether Fluor's Administrative Committee abused its discretion when it paid the benefits from Jimmy's qualified plans to Darlene instead of plaintiffs.  Before the court can determine whether the Administrative Committee abused its discretion, it must ascertain the legally correct interpretation of the plan's provisions.  <u>Id.</u>  If the Administrative Committee did not interpret the plan correctly, the court must then determine whether it abused its discretion.  <u>Id.</u>  To answer the first question the court must consider whether (1) the interpretation is consistent with a fair reading of the plan, (2) the plan has been uniformly constructed, and (3) the interpretation results in unanticipated costs to the plan.  <u>Id.</u> at 638.

2.  <u>Plan Terms</u>

Section 10.1 of the SIP provides that "upon the death of a Participant before retirement . . . the Administrative Committee

---

[22]See SIP § 3.2, Exhibit 7 attached to Plaintiffs' Motion.

[23]<u>Id.</u>

shall direct the Trustee to pay [benefits] to the Beneficiary determined in accordance with Sec. 4.2."[24]   Section 4.2 provides

> [a]ny Eligible Employee may elect to participate in the [p]lan by completing a Participant Direction.  The Participant Direction of such Employee shall:
>
> . . .
>
> (d)  Designate his Beneficiary in writing to the Administrative Committee in a manner satisfactory to the Administrative Committee.  A Participant may from time to time change his designated Beneficiary as provided in Sec. 1.1(e), and the Corporation, the Trustee and the Administrative Committee may rely upon the designation of Beneficiary last filed with the Administrative Committee.[25]

Section 1.1(e) provides that

> "Beneficiary" means a person, estate or trust designated in writing on forms supplied by the Administrative Committee (or evidenced in such other manner as may be determined by the Administrative Committee in its sole discretion from time to time) and delivered prior to death of the Participant to the Administrative Committee from time to time by a Participant in accordance with Sec. 4.2(d) to receive Benefits in the event of his death, or by an alternate payee under a qualified domestic relations order under Section 414(p) of the code and in accordance with Sec. 13.1 as provided therein.  In the event a Participant is married, the Participant's spouse is entitled to receive 100% of the Participant's benefit, unless the Participant designates an individual other than his spouse as the Beneficiary, the spouse consents in writing to such designation, which consent is witnessed by a notary public or a representative of the [p]lan, and such designation and consent must be on file with the Administrative Committee if such designation is to be honored.  The consent of the spouse shall not be required if it is established to the satisfaction of the

---

[24]_Id._ at § 10.1.

[25]_Id._ at § 4.2.

Administrative Committee that such consent cannot be
obtained because there is no spouse, because the spouse
cannot be located, or because of other circumstances as
the Secretary of Treasury may prescribe in regulations.
Any amounts with respect to which there is no such
legally designated Beneficiary living at the death of
such Participant shall be payable to the surviving
spouse, if any, of such Participant . . .[26]

Fluor asserts that

[b]ased on the foregoing terms of the Qualified Plans, at
the time of a participant's death, the Plan Administrator
must determine if the participant was married.  If the
participant was married, the Plan Administrator must pay
benefits to the participant's surviving spouse, unless
the Plan Administrator has on file the spouse's consent
to the designation of another beneficiary.  If the
participant was not married, the Plan Administrator must
pay benefits to the participant's designated beneficiary.
Accordingly, because Jimmy was married at the time of his
death, and the Plan Administrator did not have a consent
on file whereby Darlene consented to the designation of
another beneficiary, the Plan Administrator, following
the strict terms of the Qualified Plans, paid the
benefits under the Qualified Plans to Darlene, as Jimmy's
surviving spouse.[27]

3.  <u>Analysis</u>

Citing <u>McMillan v. Parrott</u>, 913 F.2d 310 (6th Cir. 1990),

plaintiffs argue that they are Jimmy's legal beneficiaries because

"[t]he SIP does not identify marriage as an event that invalidates

a previously filed beneficiary designation."[28]  Plaintiffs explain

that their

---

[26]<u>Id.</u> at § 1.1(e).

[27]Fluor Response and Motions at pp. 15-16.

[28]Plaintiffs' Motion at p. 6.

analysis as to the necessity of a spouse's consent focuses on <u>when</u> the plan participant's designation was filed.  If the plan participant's designation was filed before or after marriage, spousal consent is not required since, of course, there is no spouse existing at such times.  If the participant's designation was filed during marriage, spousal consent is required.[29]

<u>McMillan</u> involved a dispute between Barbara Parrot, the former wife of Dr. Norman Parrott, Claudia Parrot, Dr. Parrot's widow and surviving spouse, Dr. Parrott's children from yet another marriage, and Dr. Parrott's estate for the proceeds of two vested ERISA plans.  <u>Id.</u> at 310.  When the plan administrator sought a declaratory judgment to determine which of the competing parties was entitled to the plan proceeds, the district court granted partial summary judgment to Claudia Parrott, Dr. Parrott's widow, ruling that as a matter of federal law she was entitled to half of the plan proceeds, and dismissed Barbara Parrott's claim to the other half of the proceeds upon concluding that she had waived her rights as beneficiary in the divorce settlement to which she had agreed.  <u>Id.</u> at 310-311.  The district court then approved a settlement reached by Claudia, the children, and the estate in which they divided the remaining half of the plan proceeds.  <u>Id.</u> at 311.  Since the district court's grant of summary judgment to Claudia was not appealed, the only issue before the Sixth Circuit was whether Barbara Parrott had effectively waived her claim to the

---

[29]<u>Id.</u> at p. 10 (citing Exhibit 7, § 1.1(e)).

-12-

remaining half of the plan proceeds in the divorce settlement to which she had agreed.  Id.

Since the McMillan court did not address the surviving spouse's entitlement to plan proceeds, and since the case now before the court does not involve the validity of a waiver, the court concludes that McMillan is inapposite to the issue of who between the competing interests in this case is entitled to Jimmy's qualified plan benefits.  See also Manning v. Hayes, 212 F.3d 866, 871 (5th Cir. 2000), cert. denied, 121 S.Ct. 1401 (2001) (rejecting McMillan as expressing the "minority rule [in which] the named beneficiary must always prevail, without regard to any other circumstances or provisions of law").  As the Fifth Circuit explained in Manning, both ERISA and the IRC contain provisions mandating that qualified retirement plans provide death benefits to surviving spouses, 29 U.S.C. § 1055(a)(2), and that they allow participants to designate nonspousal beneficiaries only pursuant to spousal consent or entry of a qualified domestic relations order (QDRO).  29 U.S.C. § 1055(c)(1)(A) (spousal consent), and § 1056 (QDRO); 26 U.S.C. § 401(a)(11).  The statutory object of these provisions "is to ensure a stream of income to surviving spouses." Boggs v. Boggs, 117 S.Ct. 1754, 1761 (1997).

ERISA contains specific rules governing how a participant can designate a nonspousal beneficiary and how a spouse can consent to such a designation.  See 29 U.S.C. § 1055(c)(2).  See also 26

U.S.C. § 417(a)(2) (comparable provisions in the IRC).   ERISA

provides that a designation by a participant of someone other than

the surviving spouse as a beneficiary shall not be effective unless

> (A)(i) the spouse of the participant consents in writing
> to such election, (ii) such election designates a
> beneficiary (or a form of benefits) which may not be
> changed without spousal consent (or the consent of the
> spouse expressly permits designations by the participant
> without any requirement of further consent by the
> spouse), and (iii) the spouse's consent acknowledges the
> effect of such election and is witnessed by a plan
> representative or a notary public, or (B) it is
> established to the satisfaction of a plan representative
> that the consent required under subparagraph (A) may not
> be obtained because there is no spouse, because the
> spouse cannot be located, or because of such other
> circumstances as the Secretary of the Treasury may by
> regulations prescribe. Any consent by a spouse (or
> establishment that the consent of a spouse may not be
> obtained) under the preceding sentence shall be effective
> only with respect to such spouse.[30]

29 U.S.C. § 1055(c)(2) (emphasis added).   The last sentence of this

section contemplates the possibility of subsequent spouses and

grants to them the same consent rights that are enjoyed by spouses

at the moment of designation.   See Lewis v. Atlantic Research

Corp., 1999 WL 701383, *2 (W.D. Va. 1999) (citing Ronald J. Cooke,

ERISA Practice and Procedure § 4.44, 4-136 (1995) ("a subsequent

spouse of the same participant is not bound by the consent of a

previous spouse.")).

--------

[30]The relevant Treasury regulations state that spousal consent
is unnecessary where the plan representative establishes "that
there is no spouse or that the spouse cannot be located," or where
"the Participant is legally separated or the Participant has been
abandoned (within the meaning of local law) and the Participant has
a court order to such effect."  26 C.F.R. 1.401(a)-20 Q&A 27, 32.

The right of consent granted to subsequent spouses by 29 U.S.C. § 1055(c)(2) is recognized by regulations promulgated by the Treasury Secretary that apply equally to ERISA and the IRC. <u>See</u> 43 Fed. Reg. 47,713 (1978) (transferring to the Secretary of the Treasury the authority of the Secretary of Labor to issue regulations under Part 2 of Subtitle B of Title I of ERISA (which includes 29 U.S.C. § 1055)). These regulations provide that a participant's subsequent spouse is not bound by a previous spouse's consent to the designation of a nonspousal beneficiary,[31] and that the designation of a nonspousal beneficiary remains in place until the participant changes the designation or remarries, in which case the nonspousal designation is overridden by ERISA's requirement that death benefits be paid to the surviving spouse absent either that spouse's consent or a QDRO.[32]

The SIP provisions that require payment of preretirement death benefits to a surviving spouse unless that spouse has expressly

_____

[31]<u>See</u> 26 C.F.R. §§ 1.401(a)-20, Q&A29 ("Q-29: If a participant's spouse consents under section 417(a)(2)(A) to the participant's waiver of a survivor annuity form of benefit, is a subsequent spouse of the same participant bound by the consent? A-29: No. A consent under section 417(a)(2)(A) by one spouse is binding only with respect to the consenting spouse.").

[32]<u>See</u> 26 C.F.R. § 1.401(a)-20, Q&A 25(b)(3) ("If a participant divorces his spouse prior to the annuity starting date, any elections made while the participant was married to his former spouse remain valid, unless otherwise provided in a [qualified domestic relations order], or unless the participant changes them or is remarried.").

consented in writing to the plan participant's designation of a
nonspousal beneficiary are mandated by ERISA (and by comparable
provisions of the IRC) and reflected in regulations promulgated by
the Treasury Secretary.  Thus, even though Darlene was not Jimmy's
spouse when Jimmy designated the plaintiffs as his beneficiaries,
under the plain language of the SIP, ERISA, and the regulations
promulgated thereto, Darlene obtained the right to consent to that
designation upon marrying Jimmy.  Plaintiffs' argument that the
right of consent is accorded only to a spouse who is married to a
participant when a beneficiary is designated is not supported by
the language of the SIP, ERISA, or the regulations promulgated
thereto.  Moreover, plaintiffs have not cited any court decision
that supports their argument, and many decisions hold to the
contrary.  See Hurwitz v. Sher, 982 F.2d 778 (2d Cir. 1992), cert.
denied, 113 S.Ct. 2345 (1993) (retirement benefit paid to surviving
spouse regardless of fact that plan participant had named son as
beneficiary before marriage to surviving spouse); Howard v.
Branham & Baker Coal Co., 968 F.2d 1214 (Table), 1992 WL 154571
(Text) (6th Cir. 1992) (same); Binks Mfg. Co. v. Casaletto-Burns,
657 F.Supp. 668 (N.D. Ill. 1986) (same); Donohue v. Shell Provident
Fund, 656 F.Supp. 905, 908 (S.D. Tex. 1987) (citing Binks in
support of conclusion that Congress intended to protect the
interests of surviving spouses by awarding plan benefits to them
instead of to designated beneficiaries); Zinn v. Donaldson Co.,

<u>Inc.</u>, 799 F.Supp. 69 (D. Minn. 1992) (same); <u>Gallagher v. Park West</u>
<u>Bank and Trust Co.</u>, 921 F.Supp. 867 (D. Mass. 1996) (same); <u>Lewis</u>,
1999 WL 701383 (same); <u>Federal Express Corp. v. Walker</u>, 2004 WL
2985582 (W.D. Tenn. 2004) (same).

### 4. <u>Conclusion</u>

Since the parties agree that Darlene is Jimmy's surviving
spouse, and since plaintiffs fail to present any evidence from
which a reasonable fact-finder could conclude that Darlene
consented to Jimmy's designation of plaintiffs as beneficiaries of
his qualified plan accounts, the court concludes that Darlene is
the beneficiary of those accounts, that Fluor correctly interpreted
the provisions of the SIP addressing survivor's benefits, and that
Fluor did not abuse its discretion when it paid Jimmy's qualified
plan benefits to Darlene instead of to the plaintiffs.
Accordingly, Fluor's motion for partial summary judgment, and
Darlene's motion for summary judgment on entitlement to qualified
plan benefits will be granted, and plaintiffs' motion for summary
judgment on their claims to qualified plan benefits will be denied.

### B. **Non-Qualified Plan Benefits**

Nonqualified plans do not satisfy the requirements of IRC
§ 401(a), 26 U.S.C. § 401(a).[33]   The parties agree that the
nonqualified plan benefits at issue derive from Fluor's Executive

---

[33]See Fluor Response and Motions at p. 3.

Deferred Compensation Plan (EDCP).  Darlene argues that she is
entitled to summary judgment on plaintiff's claim for nonqualified
plan benefits because "Fluor found no valid beneficiary designation
since the second designation was unsigned and the first was
abrogated by [Jimmy's] marriage to [her]."[34]  Plaintiffs argue that
they are entitled to summary judgment on their claims to Jimmy's
nonqualified plan benefits because the April 6, 1993, Designation
of Beneficiary form remained valid even after Jimmy's marriage to
Darlene because Jimmy did not sign the beneficiary designation
submitted in December of 1997 that named Darlene as his
beneficiary.[35]  Fluor asserts that it has not paid benefits from the
nonqualified plan to anyone because it has not decided to whom to
pay the benefits.  Asserting that fiduciaries possess a right to
obtain appropriate equitable relief under ERISA, and that the court
has the authority to declare the rights of parties seeking
declaration in a case of actual controversy, Fluor "constructively
interpleads the Nonqualified Plan benefits with this Court and
. . . respectfully requests that the Court use its authority to
rule on who is the proper beneficiary(ies) of Jimmy's Nonqualified
Plan benefits."[36]  Neither the plaintiffs nor Darlene objects to

---

[34]Darlene's Memorandum at fifth unnumbered page.

[35]See Plaintiffs' Motion and Response at pp. 6-7.

[36]Fluor Response and Motions at p. 24 (citing 29 U.S.C.
§ 1132(a)(3) (providing fiduciary right to obtain appropriate
equitable relief under ERISA)).

Fluor's request that the court declare which of the parties is the legal beneficiary of the nonqualified plan.

1.   <u>Standard of Review</u>

In a case of actual controversy within [the court's] jurisdiction . . . [except in various circumstances which do not exist here] any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  The "actual controversy" in this case is a dispute regarding the correct beneficiary of Jimmy's nonqualified plan benefits.  Since this case involves an "actual controversy," the court concludes that it is authorized to enter a declaratory judgment.[37]

2.   <u>Nonqualified Plan Beneficiary</u>

The question of who between competing claimants succeeds to benefits from an ERISA-governed plan turns first on the plan's plain meaning, and second on ERISA and on federal court

---

[37]Although Fluor argues that it is not the proper defendant for plaintiffs's claims to nonqualified plan benefits and that the EDCP is a proper defendant, since Fluor has asked the court to declare to whom it should deliver the nonqualified plan benefits, the court is not persuaded that Fluor is not a proper party defendant to plaintiffs' claims for nonqualified plan benefits.  <u>See</u> <u>Musmeci v. Schwegmann Giant Super Mkts.</u>, 159 F.Supp.2d 329, 352 (E.D. La. 2001) (unfunded plan "is merely a nominal defendant with the true party in interest being the employer").

interpretations of ERISA.  See Hartford Life & Accident Ins. Co. v. Wilmore, 2002 WL 180363 (5th Cir. 2002) (citing Brandon v. Travelers Ins. Co., 18 F.3d 1321, 1325 (5th Cir. 1994), cert. denied, 115 S.Ct. 732 (1995)).

(a)  Nonqualified Plan

Fluor asserts that the EDCP is a "top hat" plan,[38] and neither the plaintiffs nor Darlene objects to that assertion.  Accordingly, the court concludes that the parties agree that the EDCP is a "top hat" plan.

A "top hat" plan is a plan that is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly trained employees.  See Reliable Home Health Care, Inc. v. Union Cent. Ins. Co., 295 F.3d 505, 512 (5th Cir. 2002) (citing 29 U.S.C. § 1101(a)(1)).[39]  "Top hat" plans form a rare subset of ERISA plans for which Congress has created a special regime.  The dominant characteristic of the "top hat" regime is the near-complete exemption from ERISA's substantive requirements, including ERISA's

---

[38]Fluor Response and Motions at p. 22, and the EDCP, Exhibit 8 attached to Plaintiffs' Motion, § 1.2 ("The Company intends that the Plan constitute an unfunded 'top hat' plan maintained for the purpose of providing deferred compensation to a select group of management or highly compensated employees under applicable provisions of ERISA.").

[39]See Docket Entry No. 12, p. 2.

minimum participation standards, minimum vesting standards, and various other content requirements.  29 U.S.C. § 1051(2).  See Reliable Home, 295 F.3d at 512 ("'[T]op hat' plans are exempt from ERISA's fiduciary provisions as well as its participation, vesting, and funding provisions.  See 29 U.S.C. §§ 1051(2), 1081(a)(3), and 1101(a)(1)."). "Even though top hat plans are exempt from certain ERISA requirements, they are not exempt from its reporting, disclosure, administration, or enforcement provisions.  See 29 U.S.C. §§ 1021-1045." Id. at 515.

(b) ERISA Exemptions

Since the parties agree that the EDCP is a "top hat" plan, the EDCP is exempt from the participation and vesting requirements, including the requirement that benefits be paid to surviving spouses discussed above in relation to the qualified plans. Consequently, payment of nonqualified plan benefits to a nonspousal beneficiary is not conditioned on spousal consent.  Instead, the terms of the plan documents are controlling, and enforcement of those terms is governed by the federal common law of contracts. See In re New Valley Corp., 89 F.3d 143, 149 (3d Cir. 1996), cert. denied, 117 S.Ct. 947 (1997); Kemmerer v. ICI Americas, Inc., 70 F.3d 287, 287 (3d Cir. 1995), cert. denied, 116 S.Ct. 1826 (1996). See also Spacek v. Maritime Ass'n, 134 F.3d 283, 287-288, 296-298 (5th Cir. 1998), abrogated on other grounds by Central Laborers'

<u>Pension Fund v. Heinz</u>, 124 S.Ct. 2230 (2004).  <u>See also</u> <u>Todd v. AIG</u> <u>Life Insur. Co.</u>, 47 F.3d 1448, 1451 (5th Cir. 1995) (applying federal common law of contracts to interpret insurance plan administered under ERISA).  In construing a written contract the court's primary concern is to determine the true intentions of the parties as expressed in writing.  <u>See</u> <u>Spacek</u>, 134 F.3d at 295 (describing traditional focus of contract law is establishing the parties' intent as determined by the objective manifestations of that intent contained in the language of the parties' agreement).

    (c)  Beneficiary Provisions

    The EDCP provides that "[i]n the event of the death of a Participant prior to commencement of any payments . . . payments will be made to his Beneficiary."[40]  "Beneficiary" is defined as

> [t]he beneficiary designated by the Participant under the Fluor Employees' Retirement Plan or, if no such designation has been made, then as designated on a form provided by the Participant's corporate employer, or, in the absence of any designation, the personal representative of the Participant's estate.[41]

The Fluor retirement plan in place when Jimmy died was the SIP, which provides that a participant

> shall: . . . (d) Designate his Beneficiary in writing to the Administrative Committee in a manner satisfactory to the Administrative Committee.  A Participant may from time to time change his designated beneficiary as

---

[40]EDCP, Exhibit 8 attached to Plaintiffs' Motion, § 8.1(d).

[41]<u>Id.</u> at § 2.1.

-22-

provided in Sec. 1.1(e), and the Corporation, the Trustee and the Administrative Committee may rely upon the designation of Beneficiary last filed with the Administrative Committee.[42]

Section 1.1(e) provides in pertinent part

"Beneficiary" means a person, estate or trust designated in writing on forms supplied by the Administrative Committee (or evidenced in such other manner as may be determined by the Administrative Committee in its sole discretion from time to time) and delivered prior to death of the Participant to the Administrative Committee from time to time by a Participant in accordance with Sec. 4.2(d).[43]

3.  <u>Analysis</u>

Fluor's plan representative, Mark Gray, testified that Fluor had no EDCP beneficiary form for Jimmy and that Fluor therefore looked to the beneficiary designation that Jimmy had filed for the qualified plans to determine to whom to pay the nonqualified plan benefits.[44]   Gray testified that Fluor did not consider the beneficiary designation filed in 1993 valid because Jimmy had subsequently remarried and not obtained the consent of his new wife, Darlene,[45] and that Fluor did not consider the beneficiary designation naming Darlene as beneficiary received in 1997 valid

_____

[42]SIP, Exhibit 7 attached to Plaintiffs' Motion, § 4.2(d).

[43]<u>Id.</u> at § 1.1(e).

[44]Gray Deposition at pp. 98-99.

[45]<u>Id.</u> at p. 73 ("Q:  Can you tell the jury why [the 1993 beneficiary form] ceased to become a valid beneficiary designation? A:  Because of the marriage to a new spouse.").

because it was not signed.[46]  Gray also testified that Fluor had accepted the 1997 form, scanned it into the computer, and had no procedures in place to notify a reader that it was not valid.[47] Gray also testified that Fluor now looks solely to the court to determine to whom to pay nonqualified plan benefits.[48]

Jimmy's failure to sign the 1997 beneficiary form on the line provided for that purpose was at least a technical violation of the form's instructions, which expressly stated "not valid unless signed."[49]  Nevertheless, § 4.2(d) of the SIP allows plan partici-pants to change their beneficiary designation in accordance with the provisions set forth in § 1.1(e), which states that

> "[b]eneficiary" means a person . . . designated in writing on forms supplied by the Administrative Committee (or evidenced in such other manner as may be determined by the Administrative Committee in its sole discretion from time to time) and delivered prior to death of the Participant to the Administrative Committee from time to time by a Participant in accordance with Sec. 4.2(d).

Since these provisions allowing plan participants to change their beneficiary designation require plan participants to submit their designations either "in writing on forms supplied by the Administrative Committee" or "in such other manner as may be

---

[46]Id. at p. 71.

[47]Id. at pp. 71-72.

[48]Id. at p. 30.

[49]See Designation of Beneficiary, Exhibit 4 attached to Plaintiffs' Motion and Response.

determined by the Administrative Committee in its sole discretion from time to time," but do not require the plan participant's signature, the court is not persuaded that Jimmy's failure to sign the 1997 form requires the court to conclude that plaintiffs and not Darlene are the EDCP's legal beneficiaries.

Moreover, since ERISA does not establish any method for resolving disputes between two or more competing claimants for "top hat" plan benefits, the court concludes that the current dispute must be resolved in accordance with federal common law developed under ERISA.  See Manning, 212 F.3d at 873 (recognizing that ERISA does not establish methodology for determining the beneficiaries of an ERISA plan or for resolving competing claims to ERISA-plan proceeds); Phoenix Mutual Life Ins. Co. v. Adams, 30 F.3d 554, 562 (4th Cir. 1994) ("ERISA is silent on the matter of which party shall be deemed beneficiary among disputing claimants.").  Although the Fifth Circuit has held that  federal common law may be determined by reference to analogous state law, Manning, 212 F.3d at 874, in this case there is no need for the court to look to state law because the Fifth Circuit has already recognized the existence of federal common law on this question.  See Wilmore, 2002 WL at 180363 (employing the federal common law doctrine of substantial compliance to resolve similar dispute regarding validity of change of beneficiary form).

(a)   Substantial Compliance

The doctrine of substantial compliance is used to circumvent harsh results "engendered by a formalistic, overly technical adherence to the exact words of the change of beneficiary provision in a given policy," Phoenix Mutual, 30 F.3d at 563, and "is aimed at giving 'effect to an insured's intent to comply when that intent is evident.'" Wilmore, 2002 WL 180363 (quoting Phoenix Mutual, 30 F.3d at 566).  "The doctrine [of substantial compliance] requires only that a plan participant 'intend to change his beneficiary and that he take positive action to effectuate that intent.'"   Id. (quoting Phoenix Mutual, 30 F.3d at 565).  Applying the federal common law standard for substantial compliance articulated by the Fourth Circuit in Phoenix Mutual, the Fifth Circuit held in Wilmore that a plan participant's handwritten letter asking his employer to remove his wife and her children as beneficiaries of his ERISA-governed life insurance policies, which was sent to the employer via facsimile and placed in the plan participant's file where it remained until shortly after his death, was sufficient to show the decedent's intent to change beneficiaries.   Id.

In Davis v. Combes, 294 F.3d 931, 941-942 (7th Cir. 2002), the Seventh Circuit employed the federal common law doctrine of substantial compliance in a case with facts similar to the facts now before the court.  In Davis the holder of an ERISA-governed life insurance policy filled out a "change of beneficiary" form in

-26-

her own handwriting but failed to sign or date it.  Id. at 942.
Applying the test articulated by the Fourth Circuit in Phoenix
Mutual, 30 F.3d at 565, the Seventh Circuit concluded that the
evidence left "no doubt" about the policyholder's intent to change
the beneficiary because of the following facts:  (1) at the same
time the policyholder attempted to change the policy at issue, she
successfully changed two other life insurance policies to name the
same beneficiary; (2) she requested the "change of beneficiary"
form from her employer and filled it out in her own handwriting;
(3) she completed the form in its entirety, including an effective
date, neglecting only to complete the signature and date lines; and
(4) she delivered the form to the benefits coordinator, who
accepted and processed the application as though it were complete.
Id.  Based on these facts the Seventh Circuit held that the
policyholder had substantially complied with the policy's
requirements for changing beneficiary(ies).  Id.

        The test for substantial compliance articulated by the Fourth
Circuit in Phoenix Mutual and employed by the Fifth Circuit in
Wilmore, and by the Seventh Circuit in Davis provides that

> an insured substantially complies with the change of
> beneficiary provisions of an ERISA life insurance policy
> when the insured:  (1) evidences his or her intent to
> make the change and (2) attempts to effectuate the change
> by undertaking positive action which is for all practical
> purposes similar to the action required by the change of
> beneficiary provisions of the policy.

30 F.3d at 564.  As explained by the Davis court,

                                    -27-

the criteria the Fourth Circuit articulated in <u>Phoenix Mutual Life</u> are the correct ones.  The fact that a policy holder made a careless error should not conclusively determine whether her efforts at naming a beneficiary were effective for purposes of the policy and the statute.  Carelessness suggests a lack of attention to detail, but it tells us very little about whether the policy holder formed the necessary intent to name a beneficiary and whether she took sufficient steps consistent with that intent to implement her decision. We are aware that there will be situations in which a failure to sign and date a beneficiary designation may cast significant doubt on whether the policy holder actually decided to go through with the change.  But it is equally true that there are other cases in which the evidence will unequivocally establish that the policy holder intended to make the new beneficiary designation and took positive action to effectuate that intent.  <u>Cf. Becker v. Montgomery</u>, 532 U.S. 757, 121 S.Ct. 1801, 1808, 149 L.Ed.2d 983 (2001) (holding that failure to sign notice of appeal should not be fatal where "no genuine doubt exists about who is appealing, from what judgment, to which appellate court").

<u>Davis</u>, 294 F.3d at 942.

          (b)  Application of Doctrine of Substantial Compliance

     Like the evidence before the court in <u>Davis</u>, the evidence in

this case leaves the court with no doubt about Jimmy's intent to

name Darlene the sole beneficiary of his retirement plan benefits.

Jimmy obtained the change of beneficiary form from his employer,

and filled it out in his own handwriting, neglecting only to fill

in the lines for his signature and the date.  He then submitted the

form to the Fluor benefits coordinator, who accepted and processed

the form as though it were complete.  Since plaintiffs do not

dispute these facts, Jimmy's failure to sign and date the form can

only be construed as carelessness.  Because the undisputed evidence indicates that Jimmy intended to make Darlene his beneficiary and took the steps necessary to do so, neglecting only to fill in the lines for signature and date on the Designation of Beneficiary form, the court concludes that Jimmy substantially complied with the requirements for changing beneficiary(ies) and that Darlene is, therefore, the legal beneficiary of the EDCP benefits.

## C.   Non-ERISA Claims

Asserting that plaintiffs allege numerous non-ERISA claims, including a common law third-party beneficiary claim, breach of contract claim, common law breach of fiduciary duty claim, and claims for disgorgement of profits, Fluor argues that under ERISA, all state laws that "relate to" employee benefit claims, including any common law or statutory rights of an employee seeking to recover plan benefits, are preempted.[50]  See 29 U.S.C. § 1144(a) (rights, regulations, and remedies afforded by ERISA "supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan").  Plaintiffs have not responded to these arguments.

ERISA preempts all state laws that "relate to" an employee benefit plan but do not regulate the insurance industry as a whole.

---

[50]Fluor Response and Motions at p. 25.

29 U.S.C. § 1144(a).   Suit by a beneficiary to recover benefits from an ERISA plan "falls directly under . . . [29 U.S.C. § 1132(a)(1)(B),] which provides an exclusive federal cause of action for resolution of such disputes." <u>Metro. Life Ins. Co. v. Taylor</u>, 107 S.Ct. 1542 (1987).   Since the court has already concluded that ERISA governs both the qualified and nonqualified plans at issue in this case, and since plaintiffs' claims are for benefits due under the plans, the court concludes that all of the plaintiffs' state law claims are preempted by ERISA.   <u>Id.</u>

## IV.  <u>Conclusions and Order</u>

For the reasons explained above, the court concludes that Darlene Boulet is the sole beneficiary entitled to receive benefits from both the retirement plans at issue in this case.  Accordingly, Defendant Darlene Boulet's Motion for Summary Judgment (Docket Entry No. 16) is **GRANTED**, Defendant Fluor's Motion for Partial Summary Judgment and for Declaratory Judgment (Docket Entry No. 23) is **GRANTED**, and Plaintiffs' Motion for Summary Judgment (Docket Entry No. 17) is **DENIED**.

**SIGNED** at Houston, Texas, on this 31st day of October, 2005.

SIM LAKE
UNITED STATES DISTRICT JUDGE